# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50440 | **DATE** | 7/7/2011 |
| **CASE TITLE** | May vs. Chrysler Group LLC | | |

**DOCKET ENTRY TEXT:**

Defendant's motion for judgment as a matter of law, or, in the alternative, for new trial or remittitur [186] is granted in part and denied in part. The court concludes that there was a sufficient basis for the jury to find in favor of plaintiff, and therefore, the court denies defendant's motion for judgment as a matter of law on the issue of liability. As for compensatory damages, the court concludes that the jury's award was excessive and should be remitted to $300,000. Plaintiff shall file a response to this order within 21 days indicating whether he will accept the remittitur or proceed to a new trial on compensatory damages only. As for punitive damages, the court concludes that the evidence at trial was insufficient to impose such an award, and the punitive damages award is hereby vacated.

■ [ For further details see text below.]

Docketing to mail notices.

# STATEMENT

Currently before the court is defendant's post-trial motion for judgment as a matter of law, or, in the alternative, for new trial or remittitur. The court has reviewed the parties' briefing on the motion, as well as the supplemental briefing ordered by the court. For the reasons stated below, the court grants in part and denies in part defendant's motion. Specifically, the court concludes that there was a sufficient evidentiary basis for the jury to find in favor of plaintiff on the issue of liability, but that the jury's compensatory damages award is excessive and should be reduced to a total of $300,000. As for punitive damages, the court finds no basis in the record for the imposition of such an award and will amend the judgment accordingly.

## I. PROCEDURAL HISTORY

In November 2002, plaintiff filed his original complaint in this action, raising several claims of employment discrimination. In November 2005, after an amended complaint and a significant amount of discovery, defendant filed its motion for summary judgment. In the motion, defendant argued, among other things, that it could not be liable on plaintiff's hostile work environment claim because it exercised reasonable care in attempting to prevent and correct the harassing behavior that was directed at plaintiff. In September 2006, this court granted defendant's motion for summary judgment on all claims except the hostile work environment claim. With respect to the hostile work environment claim, the court noted that defendant "certainly took some action to investigate and stop" the offensive graffiti and threatening notes that were directed at plaintiff, but also recognized that the harassment did not stop for a period of three years. The court further noted that plaintiff had presented evidence of some actions that defendant did not take that may have been more effective, such as "[u]sing surveillance cameras, checking the gate ring records, [and] interrogating employees." Based on this

record, the court could not conclude as a matter of law that defendant's actions were reasonably likely to prevent the harassment from recurring. Accordingly, the court denied summary judgment on the hostile work environment claim.

Following the summary judgment order, the parties completed their discovery, engaged in multiple settlement conferences, and filed several pre-trial motions in limine. During this time, the case was stayed on two separate occasions for reasons outside the court's control, including the health of plaintiff's former counsel and the bankruptcy of defendant's former corporate entity. In August 2010, the case proceeded to a seven-day jury trial during which the parties introduced numerous exhibits, which filled at least three large three-ring binders, and presented the testimony of several witnesses, including the plaintiff, who had information relevant to either the harassing notes and graffiti or the defendant's response to the harassment and its attempts to prevent it from recurring. At the close of plaintiff's case, defendant filed a motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). The court orally denied the motion, which the court notes was nearly identical to defendant's previously denied motion for summary judgment. After the close of the evidence and the parties' agreed upon jury instructions, which included a pattern instruction on punitive damages, the jury found that defendant "did not take steps reasonably intended to stop the harassment" and returned a verdict in favor of plaintiff. The jury awarded plaintiff $709,000 in compensatory damages and imposed a punitive damages award against defendant in the amount of $3,500,000.

After trial, defendant filed the instant motion for judgment as a matter of law or, in the alternative, for new trial or remittitur, pursuant to Federal Rules of Civil Procedure 50 and 59. Because this motion was filed after trial, it is properly considered a renewed motion for judgment as a matter of law pursuant to Rule 50(b). Following briefing on the motion, the court requested supplemental briefing from the parties, pursuant to Rule 59(d), on the issue of whether the evidence presented to the jury concerning alternative responses to the harassment that defendant could have taken, such as the installation of video surveillance cameras, was proper and relevant in light of the Seventh Circuit's recent decision in Sutherland v. Wal-Mart Stores, Inc., 632 F.3d 990, 995 (7th Cir. 2011) (stating that "the steps [the employer] failed to take are only relevant if the steps it actually took were not reasonably likely to end the harassment"). The issues have now been fully briefed and are ripe for decision.

## II. ANALYSIS

### A. Evidence of Possible Alternative Responses

Turning first to the issue raised by the court in its request for supplemental briefing regarding evidence of alternative responses to the harassment that defendant did not attempt, such as installing surveillance cameras, the court is not convinced that any evidentiary error occurred. Accordingly, the court declines to impose a new trial on this ground.

In Sutherland, the Seventh Circuit affirmed the district court's order granting summary judgment to Walmart on the plaintiff's hostile work environment claim. Id. at 996. In doing so, the court held that Walmart's responses to the harassment, which included reprimanding the harasser, limiting the overlap between the plaintiff's and the harasser's schedules, and reassigning the plaintiff to a different work station during the limited times in which her schedule did overlap with the harasser, were reasonably likely to end the harassment. Id. at 995. Given this conclusion, the court rejected the plaintiff's argument that Walmart should have taken "more drastic remedial measures" and "responded more forcefully to her accusations," such as by firing the harasser or keeping him separated from her by an even greater distance. Id. The court explained that "the steps Walmart failed to take are only relevant if the steps it actually took were not reasonably likely to end the harassment." Id. Within the context of the Sutherland case, this statement makes sense. Once the court finds that an employer has responded in a manner reasonably likely to end the harassment, evidence of additional measures that also could have been taken are not necessary to consider. In other words, once the court has determined that an

employer met its obligation to respond reasonably to the harassment, there can be no basis to hold the employer liable just because other responses may have also been available and effective.

The Seventh Circuit's opinion in Berry v. Delta Airlines, Inc., 260 F.3d 803 (7th Cir. 2001), comes to the same conclusion under similar circumstances. In that case, the court concluded that "Delta acted promptly and appropriately to end the harassment" when it caused the harasser's shift to be changed and required employees to view a sexual harassment training video. Id. at 812-13. The court noted that this response was "indisputably effective in stopping [the harasser's] inappropriate sexual behavior." Id. at 813. When confronted with the plaintiff's argument that "Delta should have taken even more aggressive measures," the Seventh Circuit emphasized that the steps taken by the employer "clearly satisfied" its obligations under the law and stated that, although "Delta doubtless could have done more . . . this is irrelevant unless [the plaintiff] can present some evidence suggesting that the steps that Delta actually took were not reasonably likely to prevent the harassment from recurring." Id. Once again, as in Sutherland, the context of this statement demonstrates that evidence of possible alternative responses an employer could have taken become "irrelevant" only if the court has already determined that the employer's actual response was reasonable.

In this case, unlike the district courts in Sutherland or Berry, this court was not able to conclude at the summary judgment stage that defendant's response was reasonably likely to prevent the harassment from recurring. Therefore, the issue for the jury to decide at trial was "whether the employer's total response was reasonable under the circumstances as then existed." Berry, 260 F.3d at 811 (quotation marks omitted). Under this broad standard, the jury was free to consider everything about defendant's response, including whether alternative measures should have been used to prevent the harassment. Thus, the court finds that the introduction of evidence concerning possible alternative responses, which was not objected to at the trial,[1] was not erroneous and does not provide a basis for a new trial.

### B. Motion for Judgment as a Matter of Law – Liability

The court may grant a motion for judgment as a matter of law only where it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1). The motion will be denied if "the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." Khan v. Bland, 630 F.3d 519, 523 (7th Cir. 2010) (quotation marks omitted). When reviewing a motion for judgment as a matter of law, all facts are construed in favor of the party who prevailed before the jury. Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673, 677 (7th Cir. 2010). Furthermore, while the court "must consider the evidentiary record as a whole, it must not evaluate the credibility of witnesses or otherwise weigh individual pieces of evidence." Walker v. Bd. of Regents of Univ. of Wis. Sys., 410 F.3d 387, 394 (7th Cir. 2005). Given the nature of the foregoing standards of review, the Seventh Circuit has commented that, as a general matter, "attacking a jury verdict is a hard row to hoe." Id. (alteration and quotation marks omitted).

In order to succeed on a hostile work environment claim, a plaintiff must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on a protected characteristic, such as race or national origin; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. Porter v. Erie Foods Int'l, Inc., 576 F.3d 629, 634 (7th Cir. 2009). Here, defendant does not dispute that the evidence at trial was sufficient to establish the first three elements of plaintiff's claim. Rather, defendant contends that there is no basis for employer liability because its response to the harassment was reasonable.

Because there is no evidence that plaintiff's supervisors were responsible for creating the hostile work environment, in order to prevail on his claim, plaintiff must show that his employer was "negligent either in discovering or remedying the harassment." Williams v. Waste Mgmt. of Ill., 361 F.3d 1021, 1029 (7th Cir. 2004) (quotation marks omitted). "Stated another way, the employer can avoid liability for coworker harassment if it

takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." Porter, 576 F.3d at 636 (quotation marks omitted). "[A]lthough Title VII does not require that the employer's responses to a plaintiff's complaints successfully prevent subsequent harassment, the efficacy of an employer's remedial action is material to our determination whether the action was reasonably likely to prevent the harassment from recurring." Cerros v. Steel Techs., Inc., 398 F.3d 944, 954 (7th Cir. 2005) (alterations, citations and quotation marks omitted).

In this case, when reviewing the evidence and drawing all reasonable inferences in favor of plaintiff, the court concludes that the evidence at trial was sufficient to allow a reasonable jury to find in favor of plaintiff. See Khan, 630 F.3d at 523. Although defendant certainly made efforts to stop the harassment and prevent it from recurring, the evidence was not as one-sided as defendant attempts to portray it in its motion and supporting memoranda, and the jury was not required to conclude that defendant's efforts were reasonably likely to prevent the harassment from recurring. See Porter, 576 F.3d at 636. Rather, there were several favorable aspects to plaintiff's case which support the jury's finding that there was a basis for employer liability.

First, the jury's verdict is supported by the fact that the harassment that plaintiff had to endure continued for such a long period of time. While this does not conclusively show that the remedial efforts taken were unreasonable, it does provide a strong inference that defendant's plan of attack was not reasonably likely to prevent the harassment from recurring given that it did not work. See Cerros, 398 F.3d at 954. Although the jury was not required to make this inference based on defendant's inability to curb the harassment, they certainly were entitled to do so.

Similarly, the jury could have concluded that defendant's response was not reasonable because it did not adequately adapt or escalate as the campaign of harassment continued. Defendant responded to instances of harassment by trying to remove the graffiti as quickly as possible, documenting its location, and notifying Human Resources. Defendant also interviewed the person who found it and anyone else in the area at the time it was discovered. Even if this response was reasonable at the outset, however, the jury could have concluded that, at some point, it was not reasonable for defendant to continue to rely on this type of reactionary response when it was quickly proving to be an ineffective deterrent. See E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 670 (4th Cir. 2011) ("'The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective. Repeat conduct may show the unreasonableness of prior responses.'" (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676-77 (10th Cir. 1998)).

Likewise, defendant attempts to make much out of the fact that Human Resources Manager Richard McPherson met with all the maintenance personnel in the paint department shortly after the harassment began and delivered a tough message that the company did not tolerate discrimination. However, this evidence could also cut against defendant, as it appears McPherson did not reiterate or further emphasize this message as the harassment continued since there is no evidence that he ever held any additional meetings. Although there is evidence that defendant took additional, behind-the-scenes steps in order to try to identify the perpetrator, including checking gate ring records and hiring a handwriting expert, it is unclear whether these efforts were ever communicated to plaintiff's co-workers. In short, there was a sufficient basis for the jury to conclude that defendant's remedial efforts became less and less reasonable as the harassment continued.

The jury also heard evidence that defendant did not investigate every incident of harassment that was directed at plaintiff. For example, plaintiff testified that he received a number of prank phone calls at work, which he reported to his managers. According to plaintiff, however, no one from management ever came to talk with him in order to investigate the calls and defendant never installed any sort of tracking device on the phone line. When asked what remedial efforts had been taken with respect to the prank phone calls, Kim Kuborn, a

member of the human resources department during the relevant time period who was responsible for maintaining a binder to document defendant's responses to the harassment, testified that she was not involved in that effort and that she did not remember what defendant had done to stop this type of harassment. From plaintiff's perspective, there did not appear to be much of any response from defendant. He testified that he felt "like [he] was a thorn on their side," and that defendant did not want to "deal with [him]" or "be bothered with anything that was going on with [him]." Plaintiff stated: "all I'm really getting from Chrysler management at the time is a lot of talk, but I don't see where they're acting or doing anything to resolve this issue," and he testified that he was frustrated because there was "[a] lot of talk and no action." Based on this testimony, which the jury was free to credit, it is not unreasonable for the jury to conclude that defendant's total response to the harassment was lacking.

The jury also heard evidence that defendant would check the gate ring records any time there was an instance of graffiti that could be determined to have occurred within a set period of time, and that defendant would use these records in order to determine who was present in the plant at the time the graffiti likely appeared. Normally, if an employee was found to be absent during the target time period, that person would no longer be considered a suspect. Generally speaking, this evidence was favorable to defendant, as it showed that they were making efforts at determining who was responsible for this anonymous harassment. However, according to plaintiff, there was at least one time in which he was not present when some graffiti was found in January 2004, but yet he remained a suspect in defendant's investigation. This evidence, if believed by the jury, would lend further support to the jury's conclusion that the investigation was not reasonably likely to stop the harassment as it calls into question the consistency and sincerity of defendant's investigative techniques.

Finally, the jury heard evidence concerning defendant's decision not to install surveillance cameras as part of its effort to stop the harassment.[2] Many of the witnesses who worked for defendant during the relevant time period were asked about whether surveillance cameras could have been used to try to stop the harassment and find out who was behind these anonymous acts, and these witnesses consistently testified that they did not think it would have been effective for a number of reasons. For example, McPherson testified that he considered using cameras, but that it was not feasible to have cameras in a four million square foot facility with multiple nooks and crannies. A number of other Chrysler employees, including Kuborn, Steven Hughes, and Craig Anderson, also testified that it would have been very difficult to use cameras because the graffiti was occurring in multiple, out-of-the-way locations, and therefore, it was not a practical solution. These witnesses also explained that they could not install a hidden camera without the union finding out, which would have limited the effectiveness of the cameras, and McPherson explained that the union would not allow the cameras to be used as a basis for terminating an employee. In spite of these explanations, the jury still could have concluded that defendant should have installed one or more cameras in the areas that were frequently targeted for graffiti, such as the area where plaintiff kept his toolbox or his locker area, but McPherson admitted that they did not do this. The jury also could have concluded that it was not reasonable for defendant to refuse to install cameras simply because the union would prevent them from being able to terminate a guilty employee, as the goal should have been to stop the harassment from occurring, not to find cause for terminating someone. Moreover, the jury heard evidence that defendant did install a hidden security camera without the union's approval when it suited its needs in an unrelated incident, and from this the jury could have discounted the sincerity and forthrightness of the explanation given by defendant's employees as to why it could not conduct other remedial measures.

Based on all these reasons, the court concludes that there was a sufficient basis for the jury to find in favor of plaintiff, and therefore, the court denies defendant's motion for judgment as a matter of law on the issue of liability.[3]

### C. Compensatory Damages

In its motion, defendant argues that, even if the verdict is allowed to stand, the compensatory damages

## STATEMENT

award is excessive and should be remitted. Defendant contends that the award is not rationally connected to the evidence, and that the amount exceeds "virtually all comparable awards in this Circuit." In response, plaintiff argues that the jury's award of $709,000 must have some meaning, since it is not a more rounded off figure, and that the amount appropriately compensates plaintiff for "the terror he experienced as a Chrysler employee for an inordinately long period of time."

"The Seventh Amendment to the Constitution requires that the Court accord substantial deference to the jury's assessment of compensatory damages." Spina v. Forest Preserve Dist. of Cook Cnty., 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002) (citing Ramsey v. Am. Air Filter Co., 772 F.2d 1303, 1313 (7th Cir. 1985)). Nevertheless, "the court must also ensure that the award is supported by competent evidence." Ramsey, 772 F.2d at 1313. Even though the court denied defendant's motion for judgment as a matter of law on the issue of liability, the court can still grant a new trial limited to damages. See Smart Mktg. Grp. v. Publ'ns Int'l Ltd., 624 F.3d 824, 832 (7th Cir. 2010). Alternatively, the court can offer the plaintiff an option of accepting a remittitur that would keep the award within rational limits. See Marion Cnty. Coroner's Office v. E.E.O.C., 612 F.3d 924, 931 (7th Cir. 2010); Ramsey, 772 F.2d at 1314.

In determining whether a new trial on damages or a remittitur of the damages award is appropriate, the court considers: (1) whether the award is monstrously excessive;[4] (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases. Thompson v. Mem'l Hosp. of Carbondale, 625 F.3d 394, 408 (7th Cir. 2010). "An award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress." Marion Cnty., 612 F.3d at 931 (quotation marks omitted); see also Farfaras v. Citizens Bank & Trust of Chi., 433 F.3d 558, 566 (7th Cir. 2006) ("Medical support is not necessary to prove emotional injury in a Title VII case.").

In this case, the court is unable to conclude that there is a rational connection between the award of $709,000 and the evidence. This is not surprising, however, given that plaintiff's counsel could not even offer any guidance to the jury on this point. During her closing argument, counsel did not make any specific demand related to plaintiff's pain and suffering and admitted to the jury that "[n]o evidence of the dollar value of physical or mental or emotional pain or suffering has been or needs to be introduced." Counsel told the jury that there was no standard to use for setting the amount of damages to award for pain and suffering, and that "we lawyers call that squishy." Given these statements, the court cannot say that the jury's award was anything more than a randomly selected number.[5]

To be clear, the court is not saying that there was no evidence to support an award for emotional distress. Plaintiff testified extensively about how the harassment made him feel, and the stress that it caused him. Plaintiff also presented the testimony of Dana Stephen Kiley, a licensed clinical social worker who first began seeing plaintiff as a patient in July 2002 and diagnosed him as having an adjustment disorder with mixed emotional features, some anxiety and some depression, that was based on his workplace stressors. This general evidence, however, does not provide a rational basis for such a large award of $709,000. Although the precise number of incidents was never pinned down, it appears from a review of the trial exhibits that there were approximately 45-50 incidents of harassing notes, graffiti, or vandalism from 2002 through 2005. Using these numbers, the jury's award works out to roughly $14,000 – $16,000 worth of damages per incident, and that would include instances of graffiti that were removed before plaintiff even saw them.[6] There is simply nothing in the record to support this kind of award.

Having found no rational basis for the jury's award, the court next turns to a review of comparable cases in order to determine if there is a range of damages for emotional distress that has been upheld as reasonable. In doing so, the court is not attempting to "fit this case into a perfect continuum of past harms and past awards," Farfaras, 433 F.3d at 567, and the court recognizes that awards in other cases can only "provide a reference point

| STATEMENT |
|---|

that assists the court in assessing reasonableness," Lampley v. Onyx Acceptance Corp., 340 F.3d 478, 485 (7th Cir. 2003).

In support of its request for a remittitur, defendant has compiled and attached a chart showing the outcomes of several cases from the Seventh Circuit or the Northern District of Illinois involving damages for emotional distress and points out that "the award in this case dwarfs all previous emotional distress awards upheld" in the listed cases. Plaintiff does not offer much in response, arguing only generally that the listed cases bear no relation to the facts of this case. Notably, however, plaintiff does not even attempt to show any comparable cases that would support the imposition of a $709,000 award. Most likely, that is because plaintiff is unable to find any cases that would even come close to supporting the amount of compensatory damages awarded in this case.

After reviewing the cases listed in defendant's chart, the court finds that the award in this case needs to be remitted to $300,000 in order to be within the range of comparable cases. The court bases this amount primarily on its review of Thompson, 625 F.3d at 410 (finding an award of $500,000 excessive and suggesting a remittitur to $250,000); Spina, 207 F. Supp. 2d at 775-76 (reducing a $3 million verdict to a total award of $300,000 in compensatory damages, of which $200,000 was for the plaintiff's emotional distress); and to some extent, the statutory limit of $300,000 in compensatory damages contained in 42 U.S.C. § 1981a for intentional employment discrimination claims.[7]

In Thompson, the jury held that the plaintiff, who was a paramedic, was placed on probationary status because of his race and awarded him $500,000 in compensatory damages based on his emotional distress. 625 F.3d at 397. In addition to being a recent case discussing the proper amount of damages for nonpecuniary loss, Thompson also provides guidance for the instant case because the juries in both cases were presented with similar evidence. Specifically, in Thompson, the jury heard extensive testimony from the plaintiff about the emotional impact that the employment discrimination had on him. Id. at 410. The jury also heard from the plaintiff's licensed counselor, who diagnosed plaintiff with an adjustment disorder with depression and anxiety based on the stress he was experiencing at work. Id. Based on this evidence, the Seventh Circuit held that an award of $500,000 was excessive and concluded that "[a] remittitur to $250,000 will keep this award within rational bounds and in line with other cases." Id. Here, despite the similarities, a larger award would be reasonable given the length of the time that plaintiff had to endure the harassment. However, the court also takes into account the fact that Thompson involved much more direct trauma, as opposed to threatening notes and graffiti from an anonymous source, given that the plaintiff was "exposed to blood from an injured homeless man and was forced to participate in and witness incidents where he felt patients who needed emergency assistance were being injured even further by paramedics." Id. Accordingly, on balance, the court finds that an award of $300,000 in this case would be in line with the Seventh Circuit's opinion in Thompson.

The Spina case provides a closer parallel to the instant case in terms of the length of harassment and the severity of the emotional distress. In Spina, the plaintiff was a police officer in the Forest Preserve District of Cook County Department of Law Enforcement who requested and was assigned to Area 2, an assignment that had never been given to a female officer. 207 F. Supp. 2d at 767. The plaintiff faced numerous challenges at work as her "male colleagues berated, belittled, and isolated her because of her sex." Id. The plaintiff complained up the chain of command, but rather than receiving a resolution, she instead "encountered ignorance and apathy from officials at even the highest levels of the District's hierarchy." Id. This pattern of harassment and inaction lasted for approximately four years. Id. As a result of the harassment, the plaintiff was fearful for her safety and felt that should could not rely upon her fellow officers. Id. at 775. The court agreed that, "[g]iven the importance of trust and comradery in law enforcement, the isolation and ostracization that Plaintiff endured could give rise to a very real fear that her safety could be in jeopardy." Id.

In reviewing the jury's damages award of $3 million, the court found that "each incident of harassment

to which Plaintiff was exposed was not, in and of itself, so extreme or outrageous as to shock the conscience," that despite the emotional distress she suffered, the plaintiff did not require medical treatment or medication as a result of the harassment, and that the defendants' conduct "never caused her to miss even one day of work." Id. at 774. Nevertheless, the court had difficulty locating a comparable case in which the plaintiff had "endured such continuous harassment at the hands of so many different officers and superiors for such an extended period of time." Id. Ultimately, the court concluded that it could not uphold a $3 million verdict, and offered plaintiff a remittitur to a total compensatory damages award of $300,000, which included a $200,000 award for emotional distress and a $100,000 award for damage to her reputation.[8] Id. at 775-76.

The Spina case provides a good comparison for the instant case because both plaintiffs endured a lengthy campaign of harassment and both suffered some emotional distress, but not to the point where the suffering became debilitating or caused them to miss work. In addition, both plaintiffs legitimately feared for their safety because of the harassment. One key difference, however, is that in Spina the jury heard evidence that "the District's conduct in ignoring Plaintiff's complaints, and in attempting to squash any meaningful investigation into her allegations, inflicted a new, separate, and significant emotional injury upon Plaintiff," id. at 772, whereas in the instant case defendant was not responsible for the actual harassment, but only for its negligence in responding to the harassment. Although defendant's lack of action clearly had an impact on plaintiff in this case, it is clear that the more significant emotional distress came from the content of the threatening notes and graffiti. Based on this comparison, the court finds that an award of $300,000 for emotional distress in this case would be consistent with, and even greater than, the remitted award in Spina.

Finally, the court finds at least some support for an award of $300,000 in this case based on consideration of the statutory limits contained in § 1981a. That section both provides a right to recovery of damages in intentional employment discrimination cases and sets a statutory limit on the amount that can be recovered. See 42 U.S.C. § 1981a. Because the section is only applicable if "the complaining party cannot recover under section 1981 of this title," it is not directly implicated in this case. Id. Nevertheless, it does provide at least some measurement of what constitutes a reasonable damages award. Section 1981a limits "the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section" to $300,000 in cases in which the respondent has more than 500 employees. Id. § 1981a(b)(3)(D). The court finds that a similar award would be reasonable in this case.

Based on the foregoing, the court concludes that plaintiff must either accept an award of $300,000 in compensatory damages or be given a new trial that would be limited to the issue of damages. Plaintiff shall file a response to this order within 21 days indicating whether he will accept the remittitur or proceed to a new trial on damages only.

### D. Punitive Damages

In addition to awarding an excessively high amount of compensatory damages, the jury imposed $3,500,000 in punitive damages against defendant. In its motion, defendant argues that the evidence at trial was insufficient to impose punitive damages in this case. The court agrees.

In order to support an award of punitive damages, the evidence must show that the employer engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of the employee. Pickett v. Sheridan Health Care Ctr., 610 F.3d 434, 447 (7th Cir. 2010) (citing 42 U.S.C. § 1981a(b)(1)). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). In order to be liable for punitive damages, the employer's conduct must be "considerably more blameworthy" than "carelessness" or "general thoughtlessness." E.E.O.C. v. Ind. Bell Tel. Co., 256 F.3d 516, 527 (7th Cir. 2001).

## STATEMENT

In this case, it is a close call whether defendant's response was reasonable or negligent. The jury determined that defendant's response fell short of the line between reasonable and negligent, and the court has concluded that there was sufficient evidence for such a finding. That being said, defendant's response in this case is nowhere near the level of maliciousness or recklessness needed to support an award of punitive damages. As discussed above, defendant made significant efforts at stopping the harassment and determining who was responsible for the anonymous notes and graffiti, including investigating the incidents as they arose, checking employee time records and gate rings in order to come up with a suspect, and hiring a forensic handwriting expert to try to identify the perpetrator. Although the harassment did not stop immediately and continued for a little over three years, the frequency of the harassment declined over time and it did eventually stop in 2005. While its possible to deem defendant's investigation imperfect and somewhat lacking, the evidence simply does not demonstrate the requisite level of callousness or intentional disregard of plaintiff's rights to support a punitive damages award. Compare Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1134 (7th Cir. 1997) (affirming a denial of the defendant's motion for judgment as a matter of law on liability but vacating the award of punitive damages). Accordingly, the jury's award of punitive damages was improper and will be vacated.

As a final matter, plaintiff attempts to argue that defendant waived its right to challenge the punitive damages award because it agreed to a jury instruction on the issue of punitive damages and because it did not separately move for judgment as a matter of law on the punitive damages issue in its Rule 50(a) motion during trial. The court does not believe there has been a waiver in this case. "Waiver is not meant as an overly technical . . . hurdle." Fox v. Hayes, 600 F.3d 819, 832 (7th Cir. 2010). While it may have been the better practice for defendant to move separately on the punitive damages issue, defendant has clearly been challenging the basis for its liability throughout the entire case, and this challenge necessarily incorporates arguments that it should not be held liable for either compensatory or punitive damages. Once the court had ruled against defendant at summary judgment and by denying its Rule 50(a) motion, it was not unreasonable for defendant to not raise the issue again at the jury instruction conference. Accordingly, the court rejects plaintiff's waiver argument.

### III. CONCLUSION

As discussed above, defendant's motion for judgment as a matter of law, or, in the alternative, for new trial or remittitur, is granted in part and denied in part. The court concludes that there was a sufficient basis for the jury to find in favor of plaintiff on the issue of liability, but that the compensatory damages award was excessive and will be remitted to $300,000 or determined at a new trial on damages only, depending on plaintiff's choice.[9] The court also concludes that there was insufficient evidence to support the punitive damages award, which is vacated.

---

1. In their supplemental briefing, the parties debate whether defendant waived any objection to the introduction of alternative measures evidence by not raising a contemporaneous objection to this evidence at trial. However, because the court has concluded that the evidence was relevant, the court need not decide this issue.

2. Other potential responses to the harassment, such as requiring limited access key cards to get into the paint department or increasing the security presence, were also presented at trial as alternative remedial efforts that defendant did not attempt, and the jury could have based its decision in part on these possible shortcomings.

3. The court also denies defendant's request for a new trial on the issue of liability. "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of

justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Davis v. Wis. Dep't of Corr., 445 F.3d 971, 979 (7th Cir. 2006). For the reasons discussed above, the court cannot conclude that the jury's verdict shocks the conscience or resulted in a miscarriage of justice with respect to defendant's liability on the hostile work environment claim.

4. The Seventh Circuit has recognized that considering whether an award is "monstrously excessive" is a vague inquiry that "may simply be another way of asking whether there is a rational connection between the award and the evidence." Deloughery v. City of Chi., 422 F.3d 611, 619 n.4 (7th Cir. 2005) (quotation marks omitted). To the extent this is an independent inquiry, the court finds that the award in this case, even though it is quite large, is not so far out of the realm of possibility as to be considered "monstrously excessive."

5. Plaintiff did not present any evidence of actual, concrete damages, such as medical bills or lost wages, because it appears that his medical bills were paid by the union and he is not seeking any compensation for lost wages. Thus, the entire compensatory damages award in this case was based on plaintiff's emotional pain and suffering.

6. In his response brief, plaintiff claims there were "more than 60 separate incidents" involved. Even if that number is correct, and it is unclear how plaintiff arrived at that number or why he could not provide a more precise figure, that still works out to an excessively large award of approximately $11,816 per incident.

7. The court recognizes that the statutory limit in § 1981a does not apply in this case because of plaintiff's § 1981 claim, but finds that the statute is helpful to consider by way of analogy.

8. The court in Spina gave the plaintiff the option of either accepting the remittitur or having a new trial limited to the issue of damages. A review of the docket sheet for Spina reveals that plaintiff accepted the remittitur.

9. Plaintiff's choice on the remittitur issue will not impair his right to appeal the court's determination on punitive damages.